John EASLEY, Appellee,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Appellant.

No. 13852.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1970.

Decided Oct. 8, 1970.

·HAYNSWORTH, Chief Judge:

The Secretary appeals from the District Court's decision holding the doctrine of administrative *res judicata* inapplicable to the plaintiff's application for review of his claim of disability and ordering the payment of disability benefits. We reverse.

Easley has filed four separate applications for Social Security disability benefits. The first, filed in October 1960, claimed disability as of December 1959 due to asthma. His last employment was listed as having terminated on January 1, 1960. No review was sought after the application was denied initially.[1]

A second application was filed in December 1962, again alleging disability due to asthma as well as a "weak right arm."[2] Again Easley was notified by letter than he had been found not to be disabled. After the denial he sought a reconsideration. His claim was again denied. Following Easley's timely request, a hearing was held on September 24, 1963. The evidence consisted of Easley's testimony and reports of seven physicians who had examined him between 1955 and 1963. The Hearing Ex-

aminer concluded that Easley was not disabled as of June 30, 1962, the last date on which he met the statutory earnings requirement for disability coverage. Easley did not request review of the Examiner's decision.

A third application, filed on February 24, 1964, was denied initially and on reconsideration. A request for a hearing was denied on the ground that the issues had already been determined and no new evidence bearing on that determination was offered. The Appeals Council declined to disturb the Examiner's decision.

Easley's fourth application was filed in December 1965. It was denied initially and on reconsideration. A hearing was granted at which Easley, now represented by an attorney, testified. His wife and a friend also testified. The record was supplemented with the evidence presented at the 1963 hearing and with two additional reports of medical examinations in 1964 and 1965. The Hearing Examiner denied an award of benefits, finding that the question of Easley's disability as of June 30, 1962 had been determined at the first hearing and was final and binding, unless the evidence at the second hearing provided "good cause" for reopening the inquiry. The Examiner specifically found that nothing in the evidence warranted reopening. The Appeals Council affirmed the denial of benefits on June 28, 1967.

On August 9, 1967 Easley filed a complaint in the District Court seeking review of the Secretary's decision. The Secretary moved for summary judgment on the ground that the case was unreviewable because of the application of the doctrine of administrative *res judicata*. The District Court held that *res judicata* was inapplicable because Easley had not had an attorney at his first hearing and because he had never

---

1. At all stages of the administrative process, in his various applications, Easley was advised of the procedures to follow if he desired review of an adverse decision. He was also advised to contact his local Social Security office if he had questions.

2. The weakness in his arm was found to be a congenital muscular defect which was not so severe as to have prevented Easley, who is left-handed, from performing varied heavy manual labor throughout his life.

before had judicial review of his claims. The Court then found that Easley was disabled and ordered payment of benefits.

In enacting the Social Security Act, Congress deliberately imposed severe restrictions on the power of the federal courts to review administrative decisions made in the implementation of the Act. No finding of fact may be disturbed if it is supported by substantial evidence. No judicial review of an administrative decision can be obtained unless an action is filed within sixty days after the claimant is given notice of an adverse final decision by the Secretary.[3] A final decision, which is not reviewed promptly, is binding on the claimant.[4]

■ Taken together, these statutory restrictions on the power of federal courts to review Social Security matters necessarily imply the existence of an administrative form of the *res judicata* doctrine. If a claimant has no right to judicial review of a decision denying him benefits unless he brings an action within sixty days of the denial, he has no right to regain it, or indefinitely extend it, by a perfunctory reassertion of his claim after expiration of the time to seek judicial review. The regulations which codify the application of *res judicata* to the administrative proceedings [5] do no more than implement the purpose of the Act to insulate the Secretary's decisions on individual claims from judicial review except within the framework of the Act. This has been

recognized by the federal courts for many years.[6]

In Grose v. Cohen, 4 Cir., 406 F.2d 823, we recognized that the doctrine is not to be so inflexibly applied to work manifest injustice. In keeping with that principle, we held the doctrine inapplicable to a case where the Secretary's decision was founded on error manifest on the face of the record.[7] In so holding, we did no more than apply an exception so well recognized that it is codified in the Social Security regulations.[8]

■ The only justification advanced by the District Court for allowing judicial review in this case, apart from the circular statement that there had been none previously, is that Easley was not represented by counsel at the hearing on his second application for benefits. We think this an insufficient basis for disregarding the principle of repose.

■ A hearing on an application for benefits is not an adversary proceeding. The applicant is confronted with no adversary in the usual sense of that term. The Social Security Administration provides an applicant with assistance to prove his claim. Here, the Administration provided a comprehensive medical examination. There is no reason to suspect any influence which would compromise its objectivity. Although only about five per cent of all applicants are represented by counsel at the initial and reconsideration stages, the majority of claims are allowed.[9] This hardly suggests the existence of widespread un-

---

3. 42 U.S.C. § 405(g).

4. 42 U.S.C. § 405(h).

5. 20 C.F.R. §§ 404.908, 404.916, 404.937 (a).

6. *See, e. g.,* Hobby v. Hodges, 10 Cir., 215 F.2d 754; James v. Gardner, 4 Cir., 384 F.2d 784.

7. In *Grose* the Secretary's determination that the applicant was able to engage in gainful employment *was made on the* basis of evidence that he had operated a paper route. The evidence showed that the applicant had not operated the route alone but required substantial assist-

ance from other persons and was, in fact, totally incapable of performing the work alone.

8. 20 C.F.R. § 404.958(c).

9. According to figures kept by the Social Security Administration, there were 515,938 disability claims processed in fiscal year 1968. Of these 343,628, or sixty-seven per cent, were allowed initially or on reconsideration. Almost four million claims of all types were processed in fiscal 1968, with eighty-three per cent being allowed at one of the first two stages of the administrative process.

fairness to applicants unrepresented by counsel or of procedural or other hurdles which are insurmountable by laymen. The contrary, in fact, is demonstrated by this case. Assisted by counsel on his fourth application, Easley was unable to present any relevant evidence of his condition that had not already been presented on his second application, when he had no assistance other than that provided by the Social Security Administration.

Nor does there appear any manifest error in the record of the administrative proceedings.[10] In fact, even were the claim not barred by *res judicata,* we would be required to reverse the judgment of the District Court. The Court's finding of disability was based on a broader review than that allowed any applicant.

The evidence at Easley's first hearing consisted of his testimony and the expert opinion of seven physicians who had examined him over the preceding three years. All of the reporting physicians believed that some degree of physical impairment existed. Although their respective evaluations varied in degree, the consensus of expert opinion was that the impairment was not so serious as to deter him from engaging in light to moderate manual labor. Only one physician expressed the opinion that Easley was unable to work. That opinion was expressed in an informal report made in July 1960. In a later report, the same physician did not repeat that conclusion and made no comment concerning disability or work restrictions. The physician who had most recently and most thoroughly examined Easley evaluated his impairment as "mild to moderate" on the basis of extensive tests. He also expressed the opinion that Easley was attempting to make his impairment appear more serious than it was.

At the hearing the Examiner learned from Easley's own testimony that he had been employed at three different jobs, including one which required heavy labor, after the claimed onset of disability. He also revealed that he lost his last job, not because of inability to work, but because of a dispute with his employer about a loan. He made no effort to find work after that time.

■ From a review of the proceedings we must conclude not only that the record is free from error manifest on the face of the evidence, but, in addition, that the Secretary's determination is supported by substantial evidence. On either ground, the Secretary's motion for summary judgment should have been granted.

The judgment of the District Court is reversed, and the case is remanded with directions to enter judgment for the defendant.

Reversed and remanded.

---

10. On appeal, Easley attempts to justify the District Court's determination that he was entitled to review by asserting that there was clear error in the record in that the Secretary failed to take mental impairment into account. The District Court did not rely on any mental impairment, and no evidence that any exists has ever been presented.