James H. CROUCH, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE,**
Defendant.

No. 73 Civ. 2703 HRT.

United States District Court,
S. D. New York.

July 19, 1974.

Zapata & Halbert, New York City, for plaintiff.

Paul J. Curran, U. S. Atty. by Borge Varmer, Regional Atty., Dept. of Health,

Education and Welfare, and Mel P. Barkan, Asst. U. S. Atty., for defendant.

## OPINION

TYLER, District Judge.

Plaintiff seeks review, pursuant to § 205(g) of the Social Security Act, as amended, ("the Act"), 42 U.S.C. § 405(g), of a decision of the Secretary of Health, Education and Welfare ("the Secretary"), denying his application to establish a period of disability and for disability insurance benefits for a period of time from February, 1966 through September 30, 1971.[1]

### PRIOR PROCEEDINGS

Two prior applications were filed before the Secretary on behalf of plaintiff alleging virtually the same reasons purporting to entitle him to disability benefits. The first such application was filed on November 2, 1966 by the Superintendent of Matteawan State Hospital for the Criminally Insane ("Matteawan"). This application was denied through the initial level on December 19, 1966. No further review was sought by the plaintiff or his representative.

The second application was filed on September 8, 1967. It was denied initially on October 25, 1967, on reconsideration May 10, 1968 and by a hearing examiner on November 27, 1968.[2] Judicial review was not sought in connection with this application in which plaintiff was represented by the Superintendent of Matteawan.

### PRESENT PROCEEDINGS

Plaintiff's present application for disability insurance benefits was filed before the Secretary on June 29, 1970. The application was denied initially and on reconsideration. Plaintiff requested a hearing which was held on November 25, 1972. Following the hearing, the administrative law judge found on January 30, 1973, that plaintiff was not under a disability. The decision of the administrative law judge became the final decision of the Secretary when it was approved by the Appeals Council on April 20, 1973.

Defendant moves for judgment on the pleadings affirming the decision of the Secretary. Defendant contends that the findings of fact and conclusions are supported by substantial evidence and are therefore conclusive.

### BACKGROUND FACTS

Plaintiff is 45 years old, received ten years of schooling, was awarded a high school equivalency diploma and subsequently attended college for approximately one year. He served in the United States Army for approximately 13 years and worked as an equipment repairman for 7 years. He was confined in a mental institution from June, 1966 through September, 1969. He alleges disability due to mental illness from February, 1966 to September 30, 1971.

The medical evidence of record may be summarized as follows: Plaintiff was admitted to Bellevue Hospital on April 1, 1966, for examination after being arrested and charged with first degree murder of his wife. In the hospital's view, he was suffering from a mental disorder diagnosed as psychosis, paranoid type, and was "in such a state of insanity as to be incapable of understanding the charge, indictment, proceedings, or of making his defense."[3] He was designated to be a suitable candidate for commitment to a mental hospital, and on August 22, 1966, he entered Matteawan, where his illness was again described as a paranoid condition.

---

1. As of September 30, 1971, plaintiff concededly no longer met the earnings requirement for disability purposes.

2. The hearing examiner's decision was approved by the Appeals Council on March 4, 1969.

3. As required by law, the report was submitted and signed by two qualified psychiatrists (Alan Holden, M.D., and A. Leonard Abrams, M.D.) designated by the Director of Bellevue Psychiatric Hospital, New York City.

The hospital, when queried by the New York State Agency on February 6, 1968, reported that the patient was "relatively comfortable on medication,"[4] and that he remained in a paranoid state. The reporting doctor characterized the condition as "probably having existed for many years before the murder. However, it may tend to be chronic and at times worsen."

In reply to a second inquiry made on April 23, 1968, by the New York State Agency, the hospital reported that the patient was still considered "not well enough to stand trial." The report continued:

"He is also described as withdrawn and preoccupied at times. However, he is cooperative at other times, but when attempts at psychotherapy are made he can become hostile, especially when details about his wife are spoken of. Nevertheless he carries out an assignment in the clothing room. He works the usual number of hours that other patients work. There is a moderate amount of responsibility required at this job. The claimant ordinarily does not require medication. However, when he does become belligerent, small doses of medication are employed. . . . The impairment is significant. The longstanding paranoid personality is, of course, still apparent. However, there is no evidence of acute psychosis present and the claimant is capable of carrying out responsibilities in his assignment."

On October 11, 1968, the Superintendent of Matteawan reported to the Social Security Administration that:

" . . . this patient is not employable in the community at the present time. As stated before he is rather withdrawn, preoccupied and although he works in the clothes room he is very sensitive to human contact and occasionally would get involved in fights. At present his mental condi-

tion is such that in case the criminal charges against him would be dismissed, we would request authorization for his admission to a civil hospital for further care and treatment."

In September, 1969, plaintiff was discharged as "fit to stand trial."

Beginning in April, 1970, plaintiff was examined on numerous occasions by Dr. G. F. Osler, a neuropsychiatrist, who found evidence of feelings of sensitivity concerning racial discrimination somewhat accentuated by plaintiff's having been refused re-employment. But apart from this, Dr. Osler found plaintiff "relevant and coherent, expressing appropriate emotionality and revealing an intact sensorium." There was no suggestion of psychosis.

On September 19, 1970, Dr. Osler submitted a second report in which he indicated that plaintiff's condition should be classified as an obsessive compulsive neurosis. He also stated that plaintiff was not psychotic and could engage in some sort of work which did not involve contact with many people and that his condition had remained stable for some time.

Plaintiff asserts that, since leaving the hospital, he has not been employed, although he received over $2,000 in severance pay which was credited to his earnings record in 1969 and 1970. He is presently supported by a 100% service-connected Veterans Administration Compensation Award of $516 per month, based on a combination of mental and physical factors. The mental condition was diagnosed as paranoid schizophrenia, competent, while his physical impairments included pes planus (flat feet) and hemorrhoids.

## CONCLUSIONS

The scope of this review is limited by 42 U.S.C. § 405(g), which states that the "findings of the Secretary as to any fact, if supported by substantial evi-

---

4. It appears from notes of various doctors who examined plaintiff from the date of his entry at Matteawan that plaintiff remained on various medications to maintain his emotional stability.

dence, shall be conclusive." If there is substantial evidence to support the examiner's finding that plaintiff was not disabled from 1966 through 1971, his decision must be affirmed, absent errors of law. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 41 (2d Cir. 1972).

This court has read and considered the transcript and the briefs filed in this case, and has concluded that the Secretary's decision that plaintiff failed to prove disability[5] is not supported by substantial evidence for part of the total period which is the subject of this case.

The Secretary makes essentially two arguments in support of his motion to dismiss. First, he claims that the doctrine of *res judicata* bars any benefits through November 27, 1968, when the hearing examiner denied a previous application by plaintiff for benefits based upon the same disability alleged in his present application. In regard to the period of time after November 27, 1968, it is argued that the Secretary's decision is supported by substantial evidence and is thus entitled to affirmance.

For the purpose of this motion, plaintiff's claim can be divided into three time periods: (1) the period from February, 1966 through November 27, 1968, which defendant claims is barred by *res judicata*; (2) the period from November 27, 1968 through September, 1969, during which plaintiff remained in Matteawan; and (3) the period after September, 1969 to September 30, 1971, following plaintiff's discharge from Matteawan.

■■ In regard to the third period of time after September, 1969 through September 30, 1971, the sole question is whether there was substantial evidence to support the HEW determination. 42 U.S.C. § 405(g). There is no question with regard to the period of time following plaintiff's discharge from Matteawan that the Secretary's decision is supported by substantial evidence. Considerable evidence exists to show that plaintiff's mental condition improved substantially in 1970. Although plaintiff continued to experience emotional problems, they were not of the level of severity to qualify him for disability benefits. In his continuing observations of plaintiff, Dr. Osler found no psychosis and indicated "that claimant is capable of engaging in some sort of work, where he does not have to come in contact with many people." The fact that plaintiff has attempted unsuccessfully to find a job has no relationship to his entitlement to disability benefits. The test of disability is the inability to work in substantial gainful employment in the national economy, not the inability to find a job. Whiten v. Finch, 437 F.2d 73 (4th Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).

Accordingly, with regard to the period of time after September, 1969 through September 30, 1971, I find that the Secretary's decision is supported by substantial evidence.

■ In regard to the first period of time, February, 1966 through November, 1968, defendant asserts that plaintiff is barred from receiving benefits by the *res judicata* effect of a prior decision of a hearing examiner dated November 27,

---

5. "Disability" is defined by § 223(d)(2) of the Act:

"(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of *substantial gainful work which exists in the national economy,* regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), '*work which exists in the national economy*' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (emphasis added)

1968. The government relies heavily upon Easely v. Finch, 431 F.2d 1351 (4th Cir. 1970). The court in *Easely* cited its previous holding in Grose v. Cohen, 406 F.2d 823 (4th Cir. 1969) and stated:

> "In Grose v. Cohen, 4 Cir., 406 F.2d 823, we recognized that the doctrine [of *res judicata*] is not to be so inflexibly applied to work manifest injustice. In keeping with that principle, we held the doctrine inapplicable to a case where the Secretary's decision was founded on error manifest on the face of the record. In so holding, we did no more than apply an exception so well recognized that it is codified in the Social Security regulations." *Easely* at 1353.

Like most disability cases, *Easely* involved a disability due to physical, as opposed to mental, impairment. The plaintiff in *Easely* was unquestionably sane and mentally competent to institute a claim and to pursue that claim to its conclusion. Crouch, however, was a diagnosed psychotic suffering from paranoia who was adjudged incompetent to stand trial. Indeed, Crouch did not even institute the initial claim for benefits; rather the claim was instituted on his behalf by his custodians at Matteawan. And, unlike *Easely*, in which it was the appellant himself who failed to seek judicial review, it was the Matteawan Hospital authorities who failed to act on plaintiff's behalf within the requisite time period. To my mind, this is one of those rare exceptions in which the dictates of fundamental fairness and equity compel reconsideration of the case.

█ Upon reconsideration of the decision of the Secretary with regard to the first and second periods of time, from February, 1966 through September, 1969. I find that the decision is not supported by substantial evidence. The medical authorities at Matteawan were unanimous in their reports that plaintiff suffered from a paranoid condition sufficiently severe to retain plaintiff as a patient for a period of almost four years. As late as October 11, 1968, the Superintendent of Matteawan unequivocally stated that plaintiff was not employable outside the hospital. The plaintiff continued to be a patient at Matteawan until September, 1969. The logical conclusion is that plaintiff remained at Matteawan because he was mentally disabled.

Plaintiff was similarly diagnosed at the time by the Veterans Administration as suffering from schizophrenia, paranoid type. From July 8, 1966 through October 1, 1970, the Veterans Administration awarded plaintiff 100% disability benefits for his mental disability. From October 1, 1970 until the present, plaintiff has been diagnosed as being entitled to 70% disability benefits. Admittedly, these awards are not binding on the Secretary. The findings, however, are the result of psychiatric evaluations and are entitled to some weight. DePaepe v. Richardson, 464 F.2d 92 (5th Cir. 1972).

The government attributes crucial significance to the fact that plaintiff worked prior to his commitment in 1966, while suffering from his paranoid condition. The medical authorities concur that plaintiff's paranoid state "probably" had existed for many years prior to the date of the crime for which he was charged. The record indicates that the disorder dated back to the period of his military service when he believed himself to be discriminated against because of his race. The reasonable inference that must be drawn from the medical evidence, however, is that plaintiff's mental and emotional condition deteriorated rapidly and to a chronic level in 1966— and only began to improve later as a result of medication and other treatment.

In reviewing plaintiff's file for the Veterans Administration, two psychiatrists concluded in September, 1966 that plaintiff's "current psychosis is a maturation of his service-connected chronic psychoneurosis." While institutionalized, according to the psychiatrists at Matteawan, plaintiff's condition would

worsen and, at times, become chronic. In summarizing the medical evidence, the HEW administrative law judge stated, "[h]e was placed on medication and showed steady improvement. In September, 1969, he was discharged as 'fit to stand trial.'" In his evaluation of the evidence, the administrative law judge concluded, "[i]n September, 1969, after showing steady improvement, the claimant was discharged from the mental hospital. It must be inferred that he had made a satisfactory recovery."

Accordingly, upon marshalling the medical evidence, the ultimate finding must be that plaintiff suffered a mental disability of a severe level during the period from February, 1966 until he was discharged from Matteawan in September, 1969.

In its conclusion that plaintiff's mental disorder was not sufficiently severe to preclude from him the performance of "substantial gainful activity", the government asserts that plaintiff's work in the clothes shop as of April 23, 1968, constituted substantial gainful activity. The Secretary also relies on the fact that plaintiff was employed prior to his institutionalization, but, in my view, this fact does not prove that plaintiff could perform gainful activity during the period of hospitalization at Matteawan.

■ Plaintiff's performance of tasks in the clothes shop at Matteawan, moreover, does not qualify as substantial gainful work which exists in the national economy. See, 42 U.S.C. § 423(d)(2)(A); Tigner v. Gardner, 356 F.2d 647 (5th Cir. 1966). Although the fact of hospitalization itself is not sufficient to meet the disability provisions of the law, it would seem that therapeutical activities by a medically sedated patient under the supervision and care of hospital attendants do not constitute gainful work in the national economy. In describing his job in the clothes shop

at the hearing before the administrative law judge, plaintiff stated:

" . . . the clothing it had to be bundled and you would tell the ward officer, you know, what was in the bundle or an officer would be there to count, as you separate this stuff. He would make a listing as to what is going to the laundry and when it returned from the laundry, we would separate it. On shower days, when the patient was permitted to take a shower, we would pass out clean clothing and collect the soiled."

Apart from cleaning up the ward, a week in the shoe repair shop, and some time in the tailor shop, plaintiff engaged in no other form of work. As stated by the Superintendent of Matteawan, plaintiff is "not employable in the community at the present time." Plaintiff has shouldered the burden of proving that the impairment was sufficiently severe to preclude all gainful employment consistent with his age, education, and experience.[6]

In full recognition of the fact that analysis of this case requires a sojourn into the vagaries and uncertainties of mental illness, I nonetheless am constrained to find that the Secretary's decision is not supported by substantial evidence. The medical authorities who have followed plaintiff's progress cannot be ignored. The record is replete with medical findings sufficiently precise and detailed to warrant a determination that the impairment was severe. In light of the policy that the Act be broadly construed and liberally applied as a remedial statute, Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 41 (2d Cir. 1972); Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969), I conclude that plaintiff's disability falls within the coverage of the Act for the period of February, 1966 through September 30, 1969.

---

6. The hearing examiner stated in his decision on November 27, 1968, that "claimant's ability to engage in substantial gainful activity is limited only by virtue of his confinement." The examiner concluded that claimant was avoiding both trial and employment, an innuendo I find unsupported by the record.

The evidence fails to support the conclusion of the Secretary that plaintiff's impairment was not of a level of severity to preclude the performance of substantial gainful activity.

Accordingly, the government's motion is granted in part and denied in part. Settle order accordingly on notice.