Lewis E. HUNT, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. M–76–1929.

United States District Court, D. Maryland.

Nov. 30, 1977.

John E. Sandbower, III and Smith, Somerville & Case, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty. and John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Lewis E. Hunt, plaintiff, has brought this action seeking a review of a final decision

of the Secretary of Health, Education and Welfare, denying the plaintiff's claim for black lung benefits under the Federal Coal Mine Health and Safety Act, as amended, 30 U.S.C. § 901 *et seq.* Jurisdiction is vested in this court pursuant to 42 U.S.C. § 405(g), incorporated by reference in 30 U.S.C. § 923(b), to review the final decision of the Secretary. In his motion for summary judgment, or in the alternative for a remand, the plaintiff claims that the Secretary's decision is unsupported by substantial evidence. The defendant has also moved for summary judgment.

On March 6, 1973, one month before he retired from his job as train engineer, the plaintiff filed an application for benefits under the Act. (Tr. 29–32). The application was initially denied by the Division of Initial Claims (Tr. 33–35) and then by the Division of Reconsideration on June 14, 1974.

Although he had requested an administrative hearing, the plaintiff notified the Social Security Administration (SSA) that he was ill and unable to walk, and therefore would be unable to attend the hearing scheduled before the Administrative Law Judge (ALJ). (Tr. 20–21). In response to a phone call from an employee of the Bureau of Hearings and Appeals, the plaintiff requested that a decision be made on the evidence already on the record. (Tr. 20). The ALJ found on November 24, 1975, that the plaintiff had not established his entitlement to the Act's benefits. (Tr. 13–19). The ALJ's decision was approved by the Appeals Council on August 10, 1976, (Tr. 6), and thereby became the final decision of the Secretary. The plaintiff then commenced this suit.

The plaintiff must establish these three facts which are the essential elements of entitlement to the Act's benefits: (1) that he has pneumoconiosis (black lung); (2) that he was totally disabled due to pneumoconiosis as of June 30, 1973;[1] and (3) that

the pneumoconiosis resulted from his employment in the coal mines. 20 C.F.R. § 410.410(b)(1). The Act authorizes the Secretary to promulgate regulations defining the standards for determining whether an applicant has established these three elements. 30 U.S.C. § 921(b). The resulting regulations, which provide several alternative methods by which the applicant can demonstrate his eligibility, incorporate the statutory presumptions for establishing each element.

I

The interim adjudicatory rules, 20 C.F.R. § 410.490, provide two alternative methods for establishing the medical requirements for total disability due to pneumoconiosis. Under the first alternative, a rebuttable presumption is created that the miner is totally disabled due to pneumoconiosis if a chest X-ray or biopsy demonstrates the existence of pneumoconiosis. 20 C.F.R. § 410.490(b)(1)(i). The plaintiff does not dispute that the only X-ray submitted in this case contained no evidence of pneumoconiosis. (Paper No. 7, p. 5).

Under the second alternative, a rebuttable presumption is created that the applicant is totally disabled due to pneumoconiosis if the results of ventilatory tests demonstrate the presence of a chronic respiratory or pulmonary disease. 20 C.F.R. § 410.490(b)(1)(ii). For a man of plaintiff's height, 68 inches, the regulations require test values equal to or less than 2.4 liters for his Forced Expiratory Volume ($FEV_1$) and equal to or less than 96 L./min. for his Maximum Voluntary Ventilation (MVV).

In a test conducted by Dr. Bernard S. Karpers, Jr. on November 14, 1973, the plaintiff received qualifying values of 2.0/2.1 $FEV_1$ and 68 L./min. MVV. (Tr. 16). Dr. H. David Kerr, a medical consultant to the SSA, found, however, that the test was unsatisfactory due to a poor and inconsistent effort by plaintiff (Tr. 16, 69)

---

1. Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, provides that the Social Security Administration has responsibility for administering the black lung bene-

fits program for claims filed through June 30, 1973. Thereafter, with certain exceptions not applicable to this case, jurisdiction to adjudicate claims passed to the Department of Labor.

and refused to certify the test. The plaintiff contends that the ALJ's acceptance of Dr. Kerr's report was unsupported by substantial evidence.[2]

The standard of review this court must apply is prescribed by 42 U.S.C. § 405(g) as follows: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is such relevant evidence of record as ". . . a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the court, is charged with reconciling inconsistencies in the evidence. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The court may not try the case *de novo*, but cannot escape its duty to scrutinize the record as a whole to determine whether the conclusions reached by the Secretary are rational. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).

The relevant regulations do not specifically address the issue of whether the ALJ can rely on the written report of a medical consultant, who has examined the spirometric tracings and found them to betray a poor and inconsistent effort by the patient, while discounting the report of the doctor who conducted the pulmonary function studies and found the patient's cooperation and comprehension to be excellent.[3] This is what the ALJ did in the instant case.

Reliance by an ALJ on consulting physicians' reports which conflict with the findings of the administering doctors has been criticized. *See, e. g., Bryington v. Mathews*, 420 F.Supp. 539, 541 (W.D.Va.1976) (concluding that the Secretary's disregard of ventilatory studies was not supported by "substantial evidence"); *Calabretta v. Secretary of Health, Education and Welfare*, 427 F.Supp. 462 (E.D.Pa.1976) (court was unable to conclude that the findings of the ALJ were supported by substantial evidence absent some explanation or justification for the rejection of testimony normally considered more credible and acceptable).

The decision of the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), addressed a different question than is presented here. In *Perales*, the Court held that the written report of a physician who examined the claimant ". . . despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself may constitute substantial evidence . . . when the claimant has not exercised his right to subpoena the supporting physician and thereby provide himself with the opportunity for cross-examination of the physician." 402 U.S. at 402, 91 S.Ct. at 1428. The Court also approved of the use of non-examining "medical advisers" as neutral advisers used to explain medical problems in terms understandable to the layman-examiner. In *Perales* the medical adviser did express an opinion, but the Court was careful to note that the opinion did not differ from the medical reports of examining physicians.

The U. S. Court of Appeals for the Fourth Circuit held that the opinion of a non-examining Social Security doctor is not

---

**2.** A second ventilatory test was conducted on November 26, 1974. Although the plaintiff again established qualifying FEV1 and MVV values, he concedes that the SSA consultant and the ALJ correctly found that this test did not comply with the testing standards of 20 C.F.R. § 410.430. (Tr. 16; Paper No. 7, p. 7). The record also indicates that in July, 1975, the plaintiff was asked to undergo a third examination. He requested that the examination be waived due to ill health. In his request for waiver, plaintiff noted that he had previously been examined by Dr. Bernard S. Karpers, Jr., the physician with whom this third appointment was scheduled. (Tr. 71).

**3.** Defendant contends that the "obvious purpose" of the requirement of 20 C.F.R. 410.430 that spirometric tracings be submitted is to provide for independent verification of test results.

substantial enough to sustain the denial of a claim when ". . . (a) the claimant's subjective evidence of disability, (b) the expert medical opinion of *examining* physicians, (c) claimant's vocational history, and (d) the objective medical facts, are all to the contrary." *Martin v. Secretary of Department of Health, Education and Welfare*, 492 F.2d 905 (4th Cir. 1974). However, a recent per curiam opinion of the Fourth Circuit, affirming a denial of black lung benefits, indicates that an ALJ may properly rely on the Secretary's own experts who have reviewed X-rays and function studies and found they failed to show sufficient pulmonary impairment while finding that the examining physician's function studies deserve no weight. *Morris v. Mathews*, No. 76–1835 (4th Cir., September 19, 1977).

In *Morris, supra*, the claimant conceded that the X-rays and pulmonary function studies involved were not sufficient to prove pneumoconiosis but contended that he had established his right to benefits by "other evidence" under 20 C.F.R. § 410.-426(d). The opinion discusses the ALJ's finding that the claimant failed to establish pneumoconiosis by X-ray or function studies as follows:

"In support of his claim, Morris submitted the report and diagnosis of a physician. Morris and his wife also testified. The physician's report showed a diagnosis of pneumoconiosis, myocardial fibrosis, and right ventricular hypertrophy. It indicated that the physician had conducted function studies on Morris and had interpreted the results to produce readings which, if accurate, would have established a presumption of disability.

"The Secretary submitted the x-rays and function studies which accompanied the physician's report to its own experts and determined that the physician had misinterpreted the results of the function studies and had relied on an erroneous interpretation of the x-rays. According to the Secretary's experts, the physician's function studies failed to show sufficient pulmonary impairment to establish Morris' claim and the physician's x-rays were negative for pneumoconiosis.

"The hearing examiner found that the physician's function studies deserved no weight due to the errors he made in interpreting them."

*Id.* at 3.

In considering the claimant's contention that he had established entitlement to benefits by "other evidence," the *Morris* opinion rejected the claimant's objection to the ALJ's decision to give little weight to the physician's diagnosis. The court stated:

"Morris also objects to the hearing officer's decision to give little weight to the physician's diagnosis. . . . [B]ut the hearing officer was entitled to discredit the physician's diagnosis, even though the physician may have conducted a physical examination, because the physician's report indicates that his diagnosis was based principally on x-rays and function studies that were later found not to indicate sufficient disability. The physician did not offer the tracings of his vectorcardiagram or other supporting data except the x-rays and function studies.

"In view of the negative x-rays, the normal electrocardiagram and the results of the function studies, the hearing officer was entitled to conclude that the 'other evidence' offered was not sufficient."

■ Based on the opinion of the Fourth Circuit in *Morris, supra*, this court concludes that the ALJ's finding that the pulmonary function studies were unsatisfactory and could not be used in comparison with the regulatory criteria for an impaired ventilatory capacity was supported by substantial evidence. The decision of the ALJ that plaintiff failed to establish entitlement to benefits under the interim regulations must be affirmed.

II

A claimant who fails to establish his entitlement to a presumption of total disability under the interim adjudicatory rules may nevertheless establish the requisite disability under the permanent rules. 20 C.F.R. § 410.490(e).

The permanent rules, 20 C.F.R. §§ 410.-410–410.462, provide several alternative means of establishing the three necessary elements for entitlement to black lung benefits. The first element which must be established is that the claimant has pneumoconiosis. Title 20 C.F.R. § 410.414 provides at least three methods for determining the existence of pneumoconiosis.

Paragraph (a) of § 410.414 provides that a finding of pneumoconiosis may be made by chest roentgenogram (X-ray), biopsy, or autopsy under the standards set forth in § 410.428. The ALJ found that the credible X-ray interpretations did not establish pneumoconiosis. The plaintiff concedes this finding is correct.

Paragraph (b) of § 410.414 provides that a claimant who establishes the existence of a totally disabling chronic respiratory or pulmonary impairment may be entitled to a rebuttable presumption that he is totally disabled due to pneumoconiosis. This presumption applies to a miner who was employed in the coal mines for 15 years or more. 20 C.F.R. § 410.414(b)(3). The regulation further provides that where a miner shows many years of coal mine employment (although less than 15), as well as a severe lung impairment, such evidence may be considered in the exercise of sound judgment to establish entitlement. 20 C.F.R. § 410.414(b)(4).

■ Plaintiff contends that the ALJ's finding that he had "at least 10 years of coal mine experience" deprived him of the presumption available under § 410.414(b) to miners with 15 years of coal mine employment. The Secretary argues that under § 410.414(b)(4) it is only necessary that plaintiff establish 10 years of mine employment to be entitled to the presumption of § 410.414(b). The defendant represents that the established administrative practice is to treat "many years" as meaning 10 years. Regardless of the length of the plaintiff's coal mine experience, however, he was not entitled to the presumption of pneumoconiosis under § 410.414(b) unless he established the existence of a totally disabling chronic respiratory or pulmonary dis-

ease. The general criteria for determining total disability are set forth in § 410.422 which provides that the determination is to be made "from all the facts of [the particular] case" with primary consideration given to the medical severity of the pneumoconiosis. Consideration is also to be given to other factors such as age, education, and work experience, § 414.422(c), in determining whether total disability exists.

Under § 414.424 pneumoconiosis may justify a finding that a miner is totally disabled based on medical criteria alone. There is no contention that plaintiff has met the requirements of this section.

The determination of total disability can also be made under § 410.426 which provides that pneumoconiosis may be found to be totally disabling if, because of the severity of the impairment, the miner is not only unable to do his previous coal mine work but also cannot, considering his age, education, and work experience, engage in any other kind of comparable and gainful work available to him in the immediate area of his residence. Pneumoconiosis must be the primary reason for the miner's inability to engage in comparable and gainful work.

Paragraphs (b) and (c) of § 410.426 provide that pneumoconiosis may be found disabling on the basis of a ventilatory study which yields values equal to or less than those specified in the table provided or if a physical performance test establishes a chronic respiratory or pulmonary impairment which is the medical equivalent of the value in the table in paragraph (b). The ALJ found, based on the consultants' analyses, that neither of the ventilatory studies plaintiff underwent were valid for comparison with the regulatory criteria for impaired ventilatory capacity. Plaintiff furnished no physical performance tests.

Finally, paragraph (d) of § 410.426 provides:

"(d) Where a ventilatory study and/or a physical performance test is medically contraindicated, or cannot be obtained, or where evidence obtained as a result of such tests does not establish that the min-

**630**

er is totally disabled, pneumoconiosis may nevertheless be found totally disabling if other relevant evidence (see § 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work."

Under § 410.414(c) a finding of the existence of pneumoconiosis can in certain instances be based on "other relevant evidence." Section 410.414(c) provides:

"(c) *Other relevant evidence.* Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term 'other relevant evidence' includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray)."

The ALJ found that:

"The credible evidence, including x-ray and other relevant evidence of record, does not demonstrate significantly impaired lung function as a result of a chronic respiratory or pulmonary condition.

"The preponderance of the medical and other relevant evidence does not demonstrate that the claimant is totally disabled as a result of pneumoconiosis. Nei-

ther does such evidence demonstrate a totally disabling chronic respiratory or pulmonary impairment which could give rise to the presumption of total disability due to pneumoconiosis."

(Tr. 19).

■ The ALJ's findings are supported by "substantial evidence." The ALJ's decision reviewed the evidence produced by the plaintiff, including his complaint of shortness of breath. It was noted that plaintiff had received no medical treatment for this condition and that the record contained no specific diagnosis of a respiratory impairment.

In reviewing the "other relevant evidence" the ALJ also considered the plaintiff's work experience as follows:

"The claimant alleges some 15 years of coal mine employment in his application (Exhibit 1) his last such employer being for the Koppers Coal Company, in Helen, West Virginia, in 1941, as a miner. His last employer was Eastern Associated Coal Corporation, (Koppers) where his job is listed as a hand loader. In his work activity development worksheet (Exhibit 9) he lists his job duties as that of an operator of a cutting machine and running a motor hauling coal out of the mines. The itemized statement of earnings of the Social Security Administration, as well as statements of co-workers, credibly establish at least 10 years of coal mine employment. He left the mines to get a better paying job on the railroad, where he served from 1941 to April 1973 as a train engineer, using similar skills used in the coal mines. His work out of the mines, although less strenuous, was comparable to his prior coal mine work, and further, the work was that of his choice, obviously. He was not required to take a less physical job because of any evidenced or demonstrable physical or respiratory impairment. No presumption of a total disability will be raised thereby."

(Tr. 17).

The ALJ found that the other relevant evidence, as a whole, did not establish the level of severity contemplated in § 410.426.

Subsequent to the ALJ's decision plaintiff submitted the following additional information to the Appeals Council by letter:

"Dear Sir:

"I have 19 years in underground coal mining starting at the age of 15 for Alma Thacker Coal Co. at Thacker, West Virginia. Mr. Whitehead was my foreman. I worked from 1923 to 1924. I then went to Auborn Coal Co. and worked on Coal tipple from 1925 to 1926 for Julius Young. I went to Howard Collier in 1927 and worked until 1929 with Leonard Akers as a brakeman in mines. In 1930, I worked for Fulson Coal Co. at Hardy, Ky., until I was layed (sic) off in 1931. I then went to work at Amico Coal Co. as brakeman for Bill Campbell in 1932 until 1933 when mines shut down.

"I next went to Koppers Coal Co. in Helen, West Virginia and worked for Mr. J. T. Craddock as motorman and machine helper on cutting machine from 1934 to 1941.

"I did not leave coal mines for better job. I left at the request of my doctor because of my lung condition. I went to my doctor, Dr. Steele, at Mullins, W. Va. for a lung check and was told by him to try to find work outside for my condition, out in the fresh air. This was September, 1940. There was no work for me outside of coal mines, so I worked on for another year. Then I went to the company Dr., Dr. Pompous, who told me the same thing. In Koppers Coal Mine, 1941, I was making wages of $7.14 per 7 hours. I came to Baltimore, Md., where I had relatives working to see if I could find work to help my lung condition. I went to work at Edgewood Arsnel (sic) as a spray painter for $4.60 per day. Mr. Gallager was my foreman.

"I worked there until I got a job on the B&O Railroad as brakeman in 194 *, but could not do the job because of climbing box cars and running for switches so I transferred to fireman on steam locomotive (sic) where you did not have to run or walk. Once on engine, you stayed at that position until relieved. My pay was $6.84 per day. Freight locomotives were stoker fired by steam pressure, so there was no work on railroad compared to coal mining.

"I am not able to do any kind of work where I have to climb stairs or walk any distance. I have not been able to hunt or fish for 15 years or more where I have to walk in fields or woods or streams.

"Reffering (sic) to examinations; When I went to work on railroad, your examination consisted of checking your hearing, sight, reflexs (sic), blood pressure and urine. You did not take tests of any kind for your lungs. You had examinations every 2 years of the same nature. If I had complained of lung condition and went (sic) to a hospital, I would not have had a job. Running a locomotive is like an office job, knowing what to do and when. There is not any work compared to coal mining. The B&O RR gives you cab service at all times from the time you report at crew dispatcher officer at street level, to 10 to 25 ft. of getting on engine where you stayed until you were relieved by another crew. Most of your work consisted of 2 to 8 hrs. from Balto., Md. to Phila., Pa. and the same hours on your return trip.

"My examination before D. Karper in 1973 at the Medical Arts Bldg., Md. reveled (sic) that I had complications in my lungs, however I am in doubt of this exam because my name was not on these papers nor have I received a copy as yet. My family doctor sent me to Hardford Memorial Hospital for examination by Dr. Sang W. Kim on Nov. 26, 1974." (Tr. at 8).

By letter of August 10, 1976, captioned "Action of Appeals Council on Request for Review," plaintiff was informed that "the hearing decision stands as the final decision of the Secretary in your case." The letter further states that "[t]he additional evidence received in connection with the request for review of the hearing decision has been considered by the Appeals Council."

* Either 1942 or 1943. A hole was punched at the last digit.

Under the "substantial evidence" standard of review which the court must apply, the Secretary, and not the court, is charged with resolving conflicts in the evidence. It is immaterial that the evidence will permit a conclusion inconsistent with that of the Secretary. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962). Since this court concludes that the Secretary's findings in this case are supported by "substantial evidence," it is bound to accept them. *See, e. g., Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974); *Underwood v. Ribicoff*, 298 F.2d 850 (4th Cir. 1962).

## III

■ Plaintiff contends alternatively that this case should be remanded. It is conceded that the mere absence of counsel is not ground for a remand. *Granger v. Finch*, 425 F.2d 206 (7th Cir. 1970), *cert. denied*, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52; *cf. Easley v. Finch*, 431 F.2d 1351, 1353 (4th Cir. 1970). Plaintiff argues, however, that "the fact that plaintiff was not present at the hearing and that grievous errors were committed, clearly indicates that the (sic) prejudice and unfairness occurred, which can only be attributed to the lack of adequate and formal representation by counsel and, as such, plaintiff did not receive a full and fair hearing."

■ Remand for reconsideration may be warranted where there is a clear showing of prejudice or unfairness which may be attributed to lack of counsel. *See Poe v. Weinberger*, 403 F.Supp. 312 (N.D.W.Va. 1975). Absence of counsel may also place a greater responsibility on the ALJ. *See, e. g.*, the recent opinion of Judge Blair in *Yocachonis v. Mathews*, C.A. No. B–75–96 (Memorandum and Order dated May 14, 1976), which states as follows:

"Because a hearing for social security benefits is not an adversary proceeding, *Easley v. Finch*, 431 F.2d 1351, 1353 (4th Cir. 1970), an administrative law judge must 'act[s] as an examiner charged with developing the facts,' *Richardson v. Perales*, 402 U.S. 389, 410 [91 S.Ct. 1420, 28 L.Ed.2d 842] (1971). To promote the search for all relevant material, he is given the power to question and subpoena witnesses and to conduct the hearing in an informal manner. *See* 20 C.F.R. §§ 401.639–643. In the case of a *pro se* claimant, he is responsible for probing into and searching for all relevant facts which may be material to the disability, *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975); *Hess v. Secretary, Health, Education and Welfare*, 497 F.2d 837, 840–41 (3d Cir. 1974); *Byrd v. Richardson*, 362 F.Supp. 957, 963 (D.S.C.1973). Failure to call a witness with crucial information or to subpoena readily available documents may be an abuse of discretion requiring the reviewing court to remand the case for further proceedings. *See, e. g., Rosa v. Weinberger*, 381 F.Supp. 377, 381 (E.D.N.Y.1974); *Hennig v. Gardner*, 276 F.Supp. 622 (N.D.Tex. 1967); *Catalano v. Weinberger*, Civ. No. Y–74–55 (D.Md. Nov. 18, 1974); *Cromwell v. Weinberger*, Civ. No. H–74–730 (D.Md. Nov. 5, 1975). . . ."
*Id.* at 8.

■ In the present case, there is no contention that the plaintiff was misled into waiving counsel or his right to be present at a hearing before the ALJ. Furthermore, although he is represented in this court by counsel, no proffer has been made of any new or additional information which could be introduced on remand. New and material evidence constitutes good cause for reopening a determination or decision. 20 C.F.R. § 404.958. Plaintiff's conclusionary statements as to his condition do not constitute additional objective evidence to be offered and are insufficient to justify a remand. *See Hoss v. Gardner*, 403 F.2d 221 (4th Cir. 1968); *Tusing v. Weinberger*, 403 F.Supp. 316, 319 (N.D.W.Va.1975).

Accordingly, for the reasons set forth above, it is this 30th day of November, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiff's motion for summary judgment be, and it hereby is, DENIED.

2. That the defendant's motion for summary judgment be, and it hereby is, GRANTED.

3. That judgment be entered for the defendant.