Lewis A. **SHARPE**

v.

Joseph **CALIFANO, Secretary, Health, Education and Welfare.**

Civ. A. No. 77–0335–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 1, 1977.

Lewis A. Sharpe, pro se.

Raymond A. Carpenter, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Lewis A. Sharpe brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to challenge a final decision of the Secretary of Health, Education and Welfare (hereinafter "the Secretary") denying plaintiff's application for disability insurance benefits. The matter comes before the Court on defendant's motion for summary judgment. The sole issue before the Court is whether the decision of the Secretary is supported by substantial evidence. After thoroughly reviewing the record, the Court finds that the record is incomplete and that the case must be remanded to the Secretary for further hearings.

■ Plaintiff initially filed an application for disability insurance benefits on May 13, 1974. This application was denied both on initial determination and on reconsideration. Plaintiff thereupon requested a hearing, which was held on May 2, 1975 and continued for further hearing on July 18, 1975. The Administrative Law Judge rendered a decision on July 28, 1975 denying plaintiff disability benefits. This decision was affirmed by the Appeals Council on October 1, 1975, and thus became the final decision of the Secretary within the meaning of § 205(g). Since plaintiff did not seek judicial review of that final decision within 60 days, as required by § 205(g), this Court has no jurisdiction to review the Secretary's denial of benefits upon plaintiff's original application. *Califano v. Sanders*, 430 U.S.

99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Teague v. Califano*, 560 F.2d 615 (4th Cir. 1977); *Easely v. Finch*, 431 F.2d 1351 (4th Cir. 1970).

■ The Court does have jurisdiction, however, to review the record pertaining to plaintiff's reapplication for disability insurance benefits on December 5, 1975. *See Teague v. Califano, supra* at 618. This application was denied initially on January 7, 1976 and was denied upon reconsideration on July 26, 1976. Plaintiff then requested a hearing, which was held on January 6, 1977, plaintiff appearing *pro se*. On January 21, 1977 the Administrative Law Judge rendered a decision denying plaintiff disability benefits. This decision became the final decision of the Secretary upon affirmance by the Appeals Council on April 13, 1977. Within the 60 day period specified by § 205(g), plaintiff commenced the action now before the Court.

The record pertaining to the reapplication reveals that plaintiff is a 47 year old male with fifth grade education. He had five weeks of mechanics school in the Armed Forces, and worked as an auto mechanic at a service station until January of 1974. He quit work at that time because of blackout spells, and has been hospitalized several times since then as a result of blackouts.

Because the Secretary's final decision to deny plaintiff's 1974 application for disability benefits was *res judicata* as to all evidence before the Secretary on that application, the hearing examiner at the 1977 hearing considered only the evidence which had been obtained since the prior decision.

The first new medical report showed that plaintiff had been examined on August 2, 1975 at the Richmond VA Hospital after complaints of shortness of breath and sharp pains on inhalation. The physical examination revealed that plaintiff had been drinking and that he had some emphysema. A chest x-ray of November 11, 1975 showed evidence of pulmonary over-expansion but no signs of active pulmonary disease.

Plaintiff returned to the VA Hospital from March 22–25, 1976, the diagnosis be-

ing chronic and acute alcohol abuse and alcohol withdrawal seizures. Plaintiff was prescribed certain medications, but the hospital staff did not know whether or not plaintiff responded to the medication since he signed out of the hospital against medical advice. On August 13, 1976, plaintiff entered Johnston-Willis Hospital after a general seizure. Plaintiff was given anti-convulsant medication and had no recurrence of seizure activity. A gastrointestinal consultation indicated some liver disease and an appropriate diet was prescribed. Plaintiff was also advised to abstain totally from alcohol. By August 24, 1976, plaintiff had improved and was discharged with medication. However, plaintiff returned to Johnston-Willis Hospital on October 29, 1976 complaining of precordial pain and had a generalized convulsion while being examined. The history at the time of admission indicated that plaintiff had not been taking his medication regularly as prescribed. Physical examination was essentially normal, except that plaintiff was confused, belligerent and disoriented. Medication was administered and he improved. On November 6, 1976 he signed out of the hospital against medical advice.

Plaintiff himself testified at the hearing that he could walk up to five blocks; that he could stand for short periods and sit for longer periods if he changed positions frequently; that he suffered an annoying but not severe pain that was partially relieved by aspirin and rest; and that he suffered blackout spells about once a week but could usually stop them if he felt them coming on. Plaintiff said he could do the minor chores around his apartment other than sweeping or scrubbing the floor, and that he spent most of his time watching television.

In his evaluation of the evidence, the hearing examiner noted the medical evidence that plaintiff had suffered from alcohol abuse for a considerable period of time, and that plaintiff's blackouts appeared to be associated with his abuse of alcohol. The examiner also noted that plaintiff was starting to have trouble with his liver, but that the problem was not yet serious and that if plaintiff abstained from alcohol abuse his liver problem might improve.

After carefully considering all of the evidence, the hearing examiner entered a finding that plaintiff was suffering from chronic alcohol abuse, from mild emphysema and from early cirrhosis of the liver. However, the examiner also found that the impairments, taken singly or in concert with each other, did not appear to make plaintiff totally disabled. Since the examiner believed that plaintiff's condition had not significantly worsened since the 1975 hearing, he considered the testimony of the vocational expert at the prior hearing still pertinent, and on that basis found that the claimant was still capable of engaging in substantial gainful employment, such as being a gateman or ticket taker.[1] Finally, the examiner found that plaintiff was not, and had not been at any prior time, under a "disability" as defined in the Social Security Act.

■ This Court must now determine whether the hearing examiner's decision is supported by substantial evidence. The Court's function is not to try the matter *de novo*, nor to resolve mere conflicts in the evidence. The Court is, however, duty bound to give careful scrutiny to the entire record to assure that there is a sound evidentiary foundation for the Secretary's findings and that his decision is rational.

---

1. At plaintiff's 1975 hearing, a vocational expert was asked what jobs plaintiff had the residual capacity to perform, assuming that plaintiff would be "limited to light activities not requiring him to be around dangerous machinery or moving vehicles and not requiring heavy lifting, repeated bending, stooping or squatting, nor prolonged walking or standing, and at which he could stand or sit as necessary for his own comfort." The vocational expert replied that plaintiff could perform a variety of seden-

tary jobs, such as gateman, ticket taker, electric motor winder, assembler, packager, or cigarette catcher. In response to a question by plaintiff's attorney whether plaintiff's blackouts would prevent him from doing these jobs, the vocational expert replied that the frequency of the blackouts would be controlling, and that according to plaintiff's own testimony the blackouts were not so frequent that they would prevent him from performing the suggested jobs.

*Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964).

Under the Social Security Act, "disability" is defined as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The Act also states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

■ Upon reviewing the record, the Court finds that the consideration of plaintiff's case thus far afforded by the Secretary has been incomplete. Though the hearing examiner reviewed the medical evidence of plaintiff's problems with alcohol and made a formal finding that plaintiff "appears to suffer from chronic alcohol abuse," he made no apparent effort to evaluate the evidence of plaintiff's alcohol abuse in light of the current Social Security regulations pertinent to alcohol abuse. The regulations relating to chronic alcoholism are neither included in the hearing examiner's Summary of Law and Regulations nor mentioned anywhere in his Evaluation of the Evidence or elsewhere in the record.

■ When a finding of chronic alcohol abuse is made, however, the hearing examiner cannot make a finding of disability without specifically applying the regulations bearing upon alcohol-related disabilities. *See Adams v. Weinberger*, 548 F.2d 239 (8th Cir. 1977); *Griffis v. Weinberger*, 509 F.2d 837 (9th Cir. 1975); *Cornett v. Weinberger*, [1975–1976 New Matter Transfer Binder] Unemployment Insurance Reporter (CCH) § 14,191 (S.D.Ohio 1975); *Badichek v. Secretary*, 374 F.Supp. 940 (E.D.N.Y.1974). In particular, these cases indicate that when alcohol abuse is indicated the Secretary must inquire whether the claimant is addicted to alcohol and as a consequence has lost voluntary ability to control its use. *Adams v. Weinberger, supra* at 244. Since no such inquiry appears in the record, the case must be remanded to the Secretary for further hearings.

■ On remand, the Secretary must apply the appropriate standards for assessment of alcoholism as a disabling disease. These regulations include: 20 C.F.R. § 404.-1506(d); ¶ 12.04 of the Appendix to Subpart P; and 20 C.F.R. § 404.1507. The Secretary is cautioned that these regulations, unlike the previous regulations relating to alcohol abuse, require neither significant organ damage nor an associated severe psychoneurosis or psychosis before a finding of disability can be made. *Adams v. Weinberger, supra* at 242. Rather, the crucial inquiries are (1) whether plaintiff's chronic alcohol abuse rises to the level of a disability, and (2) if so, whether plaintiff has the capacity or can be motivated to be rehabilitated, with or without outside psychiatric help.

If on remand it is found that plaintiff is entitled to disability insurance benefits, the Secretary may condition continuing payments of such benefits on plaintiff's reasonable efforts to treat his affliction, consistent with the regulation found at 20 C.F.R. § 404.1507.

The case is remanded for further proceedings by the Secretary not inconsistent with this opinion.

An appropriate order will issue.