**Debbie BURTON (Paul Erickson), Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. C–83–1267J.**

United States District Court, D. Utah, C.D.

June 28, 1985.

---

A. Howard Lundgren, Salt Lake City, Utah, for plaintiff.

Joseph Anderson, Asst. U.S. Atty., Corey Cartwright, Salt Lake City, Utah, for defendant.

MEMORANDUM DECISION
and ORDER

JENKINS, Chief Judge.

Paul W. Erickson timely sought review in this court of a final decision by the Secretary of Health and Human Services denying him Social Security disability benefits. Mr. Erickson alleged that he was disabled due to chronic alcoholism. The case was referred to the Magistrate who recommended the Secretary's decision be

affirmed. The matter came regularly on the calendar on November 14, 1984 for a hearing on plaintiff's Objections to Magistrate's Report and Recommendations. A. Howard Lundgren appeared on behalf of the plaintiff. Joseph Anderson and Corey Cartwright represented defendant. Following oral argument, the court took the matter under advisement. After careful review of the complete record, and having considered the pleadings and memoranda submitted on behalf of the parties, this court holds that there is insubstantial record evidence to support the Secretary's findings that Mr. Erickson's alcoholism did not constitute a severe impairment and insubstantial record evidence to support the Secretary's finding that Mr. Erickson's alcoholism was not disabling within the meaning of the Social Security Act.

## BACKGROUND

Claimant, Paul W. Erickson, filed applications in September, 1982 for Social Security disability benefits and supplemental security income. Mr. Erickson claimed that he was disabled primarily because of severe, persistent and uncontrollable alcoholism.[1] Erickson's requests for benefits were denied initially and upon reconsideration. The claimant then was granted a full hearing before an Administrative Law Judge (ALJ.) The evidence and testimony presented to the ALJ is summarized as follows:

Erickson, who was born on April 28, 1936, began drinking at the age of 14. (Rec. at 30.) Despite his apparent life-long relationship with the bottle, Erickson seemed to have managed quite well for most of his years. He married, raised three children and, for some 28 years, held down a steady job. For reasons undisclosed by the record, the year 1977 appears to have been the beginning of the end for Mr. Erickson. During the next six years, Erickson would surrender two jobs, two marriages and, ultimately, his life to alcohol.

Erickson's long-time employer, Kennecott Copper Corporation, became aware of his alcohol dependency by, at least, April, 1977. At that time, the Kennecott people began issuing warnings that Erickson's drinking was interfering with his job. Erickson was placed on "probation" numerous times for his drinking, during which times the personnel at Kennecott would assist Erickson in seeking medical help for his alcohol problem. (Rec. at 130.) Kennecott's tolerant assistance, combined with Erickson's own voluntary efforts, resulted in Erickson's hospitalization for treatment of alcoholism on nearly a dozen separate occasions between the period April, 1977 and December, 1981. (Rec. at 26–27.) The treatments obviously failed. On March 26, 1982, after 28 years with the company, Kennecott fired Erickson because of his alcoholism. (Rec. at 28.) The only other recent employment Erickson experienced was as a grocery store clerk at Safeway. He was fired from Safeway, too, due to his chronic drinking. (Rec. at 35.)

Erickson admitted that his drinking interfered with his personal relationships during that six-year period. (Rec. at 38.) In 1978, his marriage of 24 years ended in divorce. A second marriage in 1979 resulted in a similar fate a couple of years later. (Rec. at 36). After the break-up of his marriages and the loss of jobs, Erickson was forced to take up residence in his parent's basement. There, he faced increasing conflicts with his family, who was after him to "mend his ways." (Rec. at 114.) Contacts with friends and neighbors was reported to be limited. (Rec. at 114.)

Erickson also experienced untoward encounters with the law between 1977 and 1982 because of his alcoholism. The record reflects that during that period, he had ten convictions for alcohol related offenses.

---

1. The claimant originally alleged that he was disabled due to cirrhosis and poor circulation. In his request for reconsideration, however, Erickson admitted that his disabling impairment was alcoholism. Although the ALJ considered, and there is some evidence in the record that Erickson may have had medical problems apart from his alcoholism, this court's disposition of the case negates the necessity of addressing other medical issues.

(Rec. at 31.) He spent a significant number of weekends in jail for those offenses, requiring medication while confined in order to control the DT's. Upon release, Erickson would resume drinking as soon as he could walk across the street from the jailhouse to the bar. (Rec. at 32.) As a condition of Erickson's parole, he was required to take Antabuse and to quit drinking. Although he took the medication as prescribed, it seemed to have little effect on his drinking. (Rec. at 30.) Only on the days that Erickson was required to visit his parole officer, would he "watch" his intake so that he could be seen by parole officers without difficulty. (Rec. at 114.)

The medical evidence in the record leaves no doubt that Erickson suffered from severe, chronic alcoholism. Beginning in 1977, and continuing until the time of the hearing, Erickson received weekly treatment for his addiction from Dr. William W. Barrett, a psychiatrist. Three of Dr. Barrett's medical reports are included in the record, as are various laboratory and x-ray studies. The reports corroborate the numerous hospitalizations for alcohol addiction treatment and the numerous alcohol related arrests. The lab and x-ray studies reveal that beginning in 1979, Erickson began to show adverse signs of the physical effects of alcohol abuse, primarily liver abnormalities. (Rec. at 111, 118, 119) A March, 1983 CT scan showed some brain atrophy. (Rec. at 121.) Dr. Barrett's most recent report, in the form of responses to proposed questions, succinctly summarizes the history and extent of Erickson's alcohol addiction. The report states, in part, that;

Mr. Erickson is a chronic alcoholic with uncontrollable dependence on alcohol....

Mr. Erickson has a very long history of chronic and excessive abuse of alcohol. He has been hospitalized numerous times and has been through the alcohol program at Raleigh Hills as well as city and state programs and a program at the University of Utah besides hospitalization in private hospitals.

He has been jaundiced due to liver problems from alcohol and is now showing brain damage manifested on the CT scan done on March 10, 1983 by "cerebral atrophy" and on a psychological evaluation as "cognitive deterioration due to chronic alcoholism" which would indicate that Mr. Erickson does not have the intellectual capacity to learn or even to do a job requiring new learning or that is complicated.

His persistence at indulgence in alcohol makes him chronically confused which results in perseveration in speech and ideas. He is forgetfull and disconnected at times. This condition in his brain is progressive with continuation of his drinking.

Medical Report, June 6, 1983 (Rec. at 126). When Dr. Barrett was asked whether Mr. Erickson had voluntary control over his drinking, Dr. Barrett responded in the negative. *Id.*

At the administrative hearing, Erickson's testimony underscored the pervasiveness of his drinking habit. Mr. Erickson admitted that he drank between a case and a case-and-a-half of 16 oz. beers each day. (Rec. at 29.). He had downed four beers before leaving to attend his 9:00 a.m. hearing. (Rec. at 30.) At least three times a week, he managed to pour down three or four or five mixed drinks in addition to the beers. (Rec. at 29.) He did not sleep longer than an hour or two at night without awakening to take a drink. (Rec. at 37.) Mr. Erickson's description of what a "normal day" was like in his life is poignantly telling. He said:

I'll get up and I start drinking about as soon as I get up. And I watch TV. And I try to do a little yard work. But I have to—but I don't do anything until I've drank ... its kind of like in the morning when I get up, my nervous system is like this. Then—so I sit and drink and drink until I kind of level out so that I'm not in this state. I kind of get it down to where I level out and then I'll try and do a little yard work. And then I try to keep drinking to hold it down enough to where I don't go over the edge and get to the bottom like this, in order to get back.

(Rec. at 36.)

Following the hearing, the ALJ took the matter under advisement and on July 19,

1983, issued a written decision. In the decision, the ALJ stated that "it is evident that the claimant deserves the diagnosis of alcoholism." (Rec. at 8.) The ALJ concluded, however, that Mr. Erickson could "voluntarily control his alcohol consumption." (Rec. at 10, 11 & 12.) Based on that conclusion, the ALJ found that Mr. Erickson's alcoholism did not constitute a severe impairment (Rec. at 12), and alternatively, that Mr. Erickson did not satisfy the requirements for a disability based on alcoholism.[2] (Rec. at 10, 12.) The Appeals Council declined to review the ALJ's findings and Mr. Erickson timely requested that this court review the administrative hearing decision.

On December 16, 1983, before the matter had been briefed and argued in this court, Mr. Erickson was found dead in his home. The cause of death was poisoning due to an overdose of ethanol and other chemicals. (Plaintiff's Memorandum in Support of her Motion to Reverse the Defendant's Administrative Decision, Attachments A, B.) His daughter, Debbie Burton, was substituted as plaintiff. Plaintiff alleges that there is not substantial record evidence to support the ALJ's findings that Mr. Erickson could voluntarily control his alcohol intake, did not have a severe impairment and was not disabled.

## DISCUSSION

■ For a final decision of the ALJ to be sustained by the reviewing court, that decision must be supported by substantial evidence. *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1983). In determining whether there is substantial evidence to support the ALJ's decision, the reviewing court must examine evidence in the record that fairly detracts from its weight. *Universal Camera v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Nieto v. Heckler*, 750 F.2d 59, 61 (10th Cir.1984). Substantial evidence is "more that a mere scintilla. It is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ The regulations governing the Social Security Administration provide for a sequential evaluation of disability. 20 C.F.R. §§ 404.1520, 416.920 (1983). Once a claimant proves that he is not currently gainfully employed, the claimant must then show that he has a severe impairment. If a claimant's impairment is not severe, he is found not disabled. However, if a claimant's impairment is severe and that impairment precludes an individual from engaging in any substantial gainful activity, the claimant will be found disabled. *Tillery v. Schweiker*, 713 F.2d 601, 602 (10th Cir. 1983).

## SEVERE IMPAIRMENT

Although they did not do so early on, for many years now, courts have accepted the fact that "chronic, acute alcoholism is itself a disease, 'a medically determinable physical and mental impairment.'" *See Griffis v. Weinberger*, 509 F.2d 837, 838 (9th Cir. 1975). Alcoholism, as is the case with most impairments, can be present in varying degrees of severity. The ALJ in the present matter unquestionably accepted the fact that the medical evidence clearly established "that the claimant is habituated to large amounts of alcohol." (Rec. at 9). However, the ALJ found that Erickson's

2. The ALJ's specific findings relative to this review are:

\* \* \* \* \* \*

3. The claimant is a chronic alcoholic who has the ability to voluntarily control his alcohol intake.

4. The claimant's subjective complaints of ... disability based on chronic alcoholism are not found to be credible and are not borne out by the objective medical evidence.

5. The claimant does not have any impairment or impairments which significantly limit his ability to perform basic work related functions; therefore the claimant does not have a severe impairment.

6. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

habituation did not constitute a severe impairment.

The severity test for Social Security disability purposes, is designed to screen out those claimants whose physical or mental problems are so minor that they are presumptively non-disabling. For an impairment to constitute a severe impairment, the condition must be one that significantly limits a person's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1521(a). Put another way, a non-severe impairment is a "slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience...." *Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir.1984).

Given the above standard, the record in the present case is completely bereft of evidence that supports a finding that Mr. Erickson's alcoholism did not significantly limit his physical or mental ability to do basic work activities. Although it appears that Erickson could walk, sit, stand and lift without a great deal of difficulty, the ability to perform basic work activities includes more that the ability to perform certain physical functions. The Secretary's own definition of "basic work activities" includes such factors as:

a) understanding, carrying out and remembering simple instructions; b) use of judgment; c) responding appropriately to supervision, co-workers and usual work situations; and d) dealing with changes in a routine work setting. 20 C.F.R. § 404.-1521.

The inability of Erickson to perform most of the above enumerated tasks at all or without difficulty is addressed in the medical reports. The October, 1982 report states in part that Erickson "at times has difficulties in maintaining his coherence and cognition in talking about a subject. He is very repetitive and it is almost impos-

sible to get him to understand what you are trying to get over to him." (Rec. at 104.) The June, 1983 report reveals that Erickson was "chronically confused" and "forgetful and disconnected at times." In addition the report states that brain deterioration due to alcoholism resulted in the lack of "intellectual ability to learn or even do a job requiring new learning or that is complicated." (Rec. at 126.) Finally, common sense dictates that an impairment that results in repeated hospitalizations, arrests, lost jobs and broken marriages simply does not fit into the category of an impairment that has "minimal effects" on an individual.

There is nothing in the record to suggest anything other than that Mr. Erickson's alcoholism severely circumscribed his day-to-day existence, including his ability to perform basic work activities. The ALJ's finding that Mr. Erickson's alcoholism did not constitute a severe impairment is not supported by substantial evidence.

### DISABLING IMPAIRMENT

■ In addition to finding that Erickson's alcoholism did not constitute a severe impairment, the ALJ made an "alternative" finding [3] that Mr. Erickson's alcoholism did not meet the requirements for a disability based on alcohol dependency because he had the voluntary ability to control his intake. Plaintiff also challenges the sufficiency of the alternative finding.

■ Nearly every court that has addressed the issue has found that alcoholism, alone, can constitute a disability if it prevents a claimant from engaging in substantial gainful activity. *McShea v. Schweiker,* 700 F.2d 117 (3d Cir.1983); *Cannon v. Harris,* 651 F.2d 513 (7th Cir. 1981); *Ferguson v. Schweiker,* 641 F.2d 243 (5th Cir.1981); *Hicks v. Califano,* 600 F.2d 1048 (4th Cir.1979); *Lewis v. Califano,* 574 F.2d 452 (8th Cir.1978); *Griffis v. Weinberger,* 509 F.2d 837 (9th Cir.1975); *Sharpe v. Califano,* 438 F.Supp. 1282 (E.D.

---

**3.** In accordance with the sequential evaluation procedures, a finding that a claimant's particular impairment is "not severe" supports an ultimate finding that the claimant is not disabled

within the meaning of the Act and renders unnecessary any further determination. *Tillery v. Schweiker,* 713 F.2d 601, 602–03 (10th Cir.1983.)

Va.1977). The Court of Appeals for the Tenth Circuit appears not to have addressed this issue, but those courts that have, are generally in agreement that the standard for disability due to alcoholism is a showing that the claimant has a clear addiction to alcohol with the lack of ability to control its use voluntarily.[4] *McShea,* 700 F.2d at 119; *Cannon,* 651 F.2d at 519; *Ferguson,* 641 F.2d at 249; *Hicks,* 600 F.2d at 1051; *Lewis,* 574 F.2d at 455; *Griffis,* 509 F.2d at 838; *Sharpe,* 438 F.Supp. at 1286. In addition, the finding that the claimant has the ability to control his or her drinking must rest on competent medical evidence. *Lofton v. Schweiker,* 653 F.2d 215, 218 (5th Cir.1981). This court can find no persuasive authority that militates against adopting the standard agreed upon by the several circuits for determining whether alcoholism constitutes a disability within the meaning of the Act. It so adopts that standard.

In the present case, the ALJ disclaimed the precedential value of the court-established tests for chronic alcoholism, set forth above, because of the absence of Tenth Circuit or Supreme Court decisions. (Rec. at 11). Despite the disclaimer, it appears that the ALJ chose to follow the rationale accepted by the several circuits in analyzing the record evidence in that he determined whether Mr. Erickson had a clear addiction to alcohol with the lack of ability to control its use. In short, the ALJ unequivocally accepted the diagnosis of Mr. Erickson's chronic alcoholism, but concluded that Erickson had the ability to voluntarily control his consumption. (Rec. at 11). Based on that conclusion, the ALJ then found that Erickson's alcoholism was not disabling within the meaning of the Act.

The medical evidence in the record going to the question of voluntary control over alcohol intake could not be any more plain. When Dr. Barrett, Erickson's long-time, personal physician, was asked whether Er-

ickson was a chronic alcoholic, he responded, "Mr. Erickson is a chronic alcoholic with uncontrollable dependence on alcohol." (Rec. at 126.) On two earlier reports, Dr. Barrett's diagnosis is "alcohol dependence" (Rec. at 105) and "Alcoholism, chronic, severe, persistent." (Rec. at 115.) When Dr. Barrett was specifically asked whether Erickson had voluntary control over his drinking, Dr. Barrett responded, "No. He drinks a case of beer daily while taking 250 mg. of Antabuse Tuesday and Friday. Then at times he will drink a fifth of whiskey." *Id.* There is no competent medical evidence in the record that disputes Dr. Barrett's opinion nor reason for this court to doubt it.

It is clear that in concluding that Mr. Erickson could voluntarily control his alcohol intake, the ALJ focused exclusively on an isolated portion of a statement contained in one of Dr. Barrett's medical reports. The statement reflects an observation that Mr. Erickson watched "his [alcohol] intake enough so that he is able to report to his parole officer and be seen without difficulty, because part of his returning to prison is dependent whether or not he is drinking." (Rec. at 114.) The ALJ interpreted that observation to mean that Mr. Erickson had the voluntary ability "to control his drinking when the alternative is incarceration." (Rec. at 10.) The record simply does not bear out that conclusion.

The full text of the statement in the medical report, upon which the ALJ relied in part, is as follows:

> *This man continues to drink daily* anywhere from a case to a case-and-a-half of 16-ounce beer. Once in a while he does indulge and go on a bender on heavy spirits. He is just watching his intake enough so that he is able to report to his parole officer and be seen without difficulty, because part of his returning to prison is dependent whether or not he is drinking. *So far they have not been*

---

4. As one court noted, "some alcoholics can stop; more cannot." *Griffis v. Weinberger,* 509 F.2d 837, 838 n. 1.

*able to perceive his alcoholic intake* and so there are no problems.

(rec. at 114.) (emphasis added.) It is painfully clear from the above statement that Mr. Erickson was not "controlling his drinking" at all, even when the alternative was incarceration. He continued to drink heavily on a daily basis. Apparently what Erickson was able to do was watch his intake enough for an hour or so on the few occasions required to pass muster on a parole interview. The conclusory assertion that if a person can endure a few hours without a drink to stay out of jail, he can maintain sobriety to regularly function on a job, demonstrates a misapprehension of the nature of alcoholism. *See Ferguson v. Heckler*, 641 F.2d 243, 249 (5th Cir.1981) ("The conclusory assertion that because a person has stopped drinking, he can again do so ... is unwarranted and shows an insensitivity to the problems faced by alcoholics.")

The ALJ's finding that Mr. Erickson could voluntarily control his alcohol intake is not supported by substantial evidence in light of the uncontroverted medical opinion that Mr. Erickson lacked the ability to voluntarily control his drinking. In accordance with the standard adopted herein by this court for determining disability due to alcoholism, the claimant has conclusively proven his disability. It is abundantly clear that Mr. Erickson could "do no work at all if he [could] not control his abuse of alcohol." *Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir.1985.) Plaintiff is entitled to a decision in her favor based on the record.

Accordingly, IT IS ORDERED that the decision of the Secretary is REVERSED.